My name is Jeff Slegel. I am the attorney for American Contractors Indemnity Company, which is the appellant here today. American Contractors was the plaintiff in the case below. This case involves the rights of a commercial surety company arising under a written contract of indemnity. American Contractors issued payment and performance bonds in connection with a construction project at the request of one of the defendants, appellees here today, Carolina Realty and Development Company. Those bonds in general guaranteed the performance of payment of suppliers of labor material to the project. As often happens, a dispute arose concerning the performance of Carolina Realty on that project. A dispute between Carolina Realty as a subcontractor and the general contractor on the project. The general contractor, of course, was the obligee on American Contractors' bonds. American Contractors owed its obligations and the duty of performance to the obligee, the general contractor, not to Carolina Realty as the principal obligor. As also frequently happens, American Contractors wanted to resolve the claims against its bonds, but Carolina did not agree with the resolution of that dispute. Ultimately, American Contractors did settle with the general contractor that was the obligee on its bonds, but without the participation of Carolina. In fact, with and over the objection of Carolina Realty. The issue in this case is whether Carolina Realty and the other individuals who executed the contract of indemnity agreeing to protect American Contractors from adverse consequences of issuing bonds will be able to evade their obligations to American Contractors by exploiting general terms included in a release in that settlement agreement where the purpose of the settlement agreement was to resolve the claims by and between the general contractor and American American Contractors as the bonding company. And where, in fact, that settlement agreement was reached over the objection of Carolina and without participation of Carolina. At this point, I'm inclined to move a little bit out of my logical sequence and pay some attention to the equitable considerations that somewhat form a subtext or an undercurrent for the dispute in this case. Well, since equity comes into play when the law is somehow inadequate, let's deal with the law a little bit longer. Did you, you had an opportunity if you wanted to have a subrogation clause in your your settlement agreement, didn't you? I'm not sure what you're... I mean a subrogation that is I'm paying this claim off. I'm standing in your shoes as to Carolina because the underlying theory of liability against them that I'm resolving right now. I understand cutting off my bleeding by paying it, but I'm going to stand in your shoes, subrogate your claim you have otherwise against Carolina, then you can collect on it after you litigate it. That's what I, my understanding of the subrogation clause is. Your honor points out an important distinction between under an equitable claim of subrogation. American contractors would do that by paying a claim on the bond and stepping into the shoes of the creditor to whom it was subrogated. That right would extend only against the principal on the bond. In other words, that a right of subrogation would have been, would have arisen in equity as a result of the payment of the general contractor and would have been only by American contractors, the bonding company, against Carolina Realty, the company, as the principal obligor on the bond. That's not the claim that we're talking about. We're talking about a contractual right of indemnity based on a specific written contract of indemnity that was executed not only by Carolina Realty, but by other individuals who are the owners and executives of Carolina Realty and who had a financial stake in in inducing American contractors to take the risk of issuing bonds. And American contractors' rights under the indemnity agreement are contractual and are legal and are different from subrogated rights. It could arguably be the case that by executing a settlement agreement without reserving subrogation, American contractors gave up its rights of equitable subrogation. That has no bearing on American contractors' claim in this case, which is based on purely the contractual indemnity that was executed by the defendants, all of them, as primary indemnitores. Could you, oh sorry, and maybe I'm, I, couldn't American contractors' indemnity have preserved that contractual indemnity claim in the settlement? The concern that I have is, as I understand it, the district court relied on the four corners of the settlement as it is required to do by the district court. And it includes specific exceptions, but your indemnity claim isn't one of them. Your Honor, I have two answers to that question. And the first is that while the district court, in its order on summary, judged a lip service to the notion of examining the four corners of the agreement, in point of fact, the district court did not examine the four corners of the agreement. If you look to that order, the district court looked only to paragraph four of the settlement agreement and, in fact, emphasized only a very small portion of that paragraph four. And the other part of my answer, Your Honor, has to do with the fact that, yes, in hindsight, in 2020 hindsight, now that we're here today, I can certainly say, well, yes, if I could travel back in time, I would include additional language bending over backwards to make clear that the extent of the release contained in paragraph four was not intended to expand out beyond the purpose of the settlement agreement that is, in fact, obvious from the four corners of the settlement agreement. But the fact that that could have been avoided doesn't mean that what was done gave the release that the defendants below, at least here, Caroline Realty and the other indemnitors are claiming. If you look to the four corners of the settlement agreement, beginning with the general language of paragraph four, which is the release language, which is the broad language that the indemnitors are trying to get under, that you can actually look to a phrase, it's only a few words, it's matters relating to the project. Or arising out of. Actually, Your Honor, at different places. I'm sorry, I'm looking at the release. And I am too, Your Honor. There, the language is strange. But if you see, if you look to paragraph four, you see it refers to past and present claims, demands, damages, debts, or cause of action in law or inequity, damages and losses of any and all kind or nature, whether contingent or fixed, known or unknown, for claims which arise or may arise out of acts, omissions, or events which occurred prior to the date hereof, arising out of or related to, we've dropped down, we keep dropping down. The federal action, the Bracco action, Infinity action, Dick claims, Carolina work, Carolina claims, ACIC claims, which are all defined terms which take you back to the recitals, and which don't help the indemnitors. Moreover, and then there's more, it's more language. But at the end of that sentence it says, and all other matters between the parties relating to the project, that's the, that's where it goes out like this in the description. All other matters relating to the project. And I will, certainly, Your Honor, if you. But that's not, I'm sorry, that's not the only place it goes. But, I'm sorry, Your Honor, I didn't mean to interrupt. Perhaps I could ask it this way. What, in your view, did the district court ignore? It primarily ignored the recitals and the context of the agreement. The district court focused in on a very, if I can take a photography analogy, it zoomed in on a very narrow reading. A portrait photograph would look at the entire agreement, and a landscape photograph, which Florida law embraces in the notion of existing circumstances at the time of execution of the contract, would incorporate the situation in which the contract was executed to arrive at its actual purpose. But, but that's a slightly, that's a slightly different focus. One can only go to extrinsic evidence, which is what it seems to me that you're referring to when you talk about context, if, if there's an ambiguity. So, I'm not sure what within the four corners of the document you believe that the district court ignored. Well, Your Honor, that phrase, relating to the project, referred project is a defined term. If you look back to the recitals, project is defined in conjunction with another defined term, Carolina work, which was Carolina's undertaking under the subcontracts and with the ACIC bonds. So, relating to the project in, just within the agreement itself, refers to Carolina's obligations on the project and American contractors' obligations under the bonds to, to be a surety, to be a fallback, to be the deep pocket for the failure of Carolina Realty to each of the parties fully settle, release, et cetera, each of their agents, insurers, sureties, et cetera, from any and all past and present claims, ellipses, which arise or may arise out of all other claims between the parties relating to the project. And then there are specific exclusions. Your Honor, and I'm glad you point that out because the district court relied on that term and their sureties to drag in the other defendants, the individual indemnitores, who of course are not parties to the settlement agreement, but they're not sureties either. The indemnitores of American contractors under the indemnity agreement are indemnitores. They are not sureties. And the individuals are not sureties for Carolina Realty. The indemnity agreement is not a bond. Each and every one of the indemnitores, Carolina Realty and each of the individuals, has a joint and several primary obligation to American contractors under that indemnity agreement. So, there are no sureties. Mr. Slago, let me ask you, this to me is a real close case. The differences in opinions between the magistrate judge and the district judge points that out. My question to you is this, what is your single best argument that you should prevail, your interpretation should prevail? One sentence. One sentence is that the agreement taken as a whole establishes a purpose of settling disputes between, on the one hand, Carolina Realty and its surety, and on the other hand, the general contractor and its sureties, and emphasizes what it does release in the recitals, which are emphasized repeatedly in the document. And the broad language in paragraph four has to be understood in relation to those recitals, which are paragraph one of the covenants incorporates the recitals are in there twice. Okay, I understand. I understand. Thank you. You got some time for questions. I'm John Simmons. I'm representing the affiliates of Carolina Realty for individuals. I do not represent John Baer and Janice Baer, who are pro se. I think they may have filed, one or more may have filed their briefs, but just so the court's clear on that issue. Your honors, I think you've honed in on the issues here. If we submit the district court properly apply what it calls universal contract principles in concluding that this settlement agreement must be enforced pursuant to its very unambiguous terms. The court went over the settlement language, and again, we think it is as determined by Judge Kane, the four corners apply here. This would be one of the broadest, most general release language. Again, not only involving the Florida litigation, as Mr. Slagle asserted, but specifically also, quote, all other matters between the parties relating to or arising out of the project. The release includes agents, not only sureties, and Mr. Slagle pointed out, I think Carolina Realty is a party to the agreement through its attorney in fact, so it's actually listed. But in addition, the agents, sureties, etc. of all of these parties are also included in the release, and I would also point out for the court's consideration, the issue as to whether the parties were covered by the release was not argued below. So to the extent that that is a question, I don't think that issue was argued below nor has been preserved. I think it is addressed by Judge Kane's argument, and it's addressed by the language in the release. Judge Gregory, as you pointed out, you framed it in terms of the subjugation, and Mr. Slagle was talking about the contractual indemnification. Regardless of, I think, how you frame that issue, Judge Duncan, you addressed that question. There is a specific carve-out provision here, and Judge Kane very clearly relied on that heavily in reaching his conclusion, not only on the unambiguous language of relating to or arising out of the project in finding this release covered this, but also the fact that the parties here contemplated and included a specific carve-out provision on an indemnification claim, interestingly, which of course leads to the question, Mr. Slagle said in retrospect, if he had gone back and drafted the language, he probably would have included that. Well, hindsight doesn't help this case. We think that the court clearly has to go in the four corners of the unambiguous terms. There is a carve-out that is inapplicable, which of course begs the question of why there is not a carve-out to this and the exclusion of that, we think, leads to the conclusion that the agreement should be enforced. Let me ask you this. Yes. Wasn't the indemnity action pending at the time of this settlement? That's correct, Judge. One of the things that bothers me is all these other actions are specifically listed, all the other actions that were pending, but the indemnity action is not listed as one of them, and I don't know how you want to address that. It's obviously not independently listed, even though it was pending like the others were, and here's your opportunity to tell me why that shouldn't matter. Sure, no question, Judge Drexler. It is not included in the agreement. I don't think that it matters in terms of looking at the four corners of the agreement. It is covered despite the fact that it is not explicitly listed in several respects, Your Honor, because it says that the release goes to, in the recitals and the whereas clause, in the penultimate paragraph of the first page of the agreement, page 81 of the Joint Appendix, that it's to resolve all issues, not only in that litigation that's listed, Judge Drexler, but it specifically says, and all other matters between the parties relating to or arising out of the project, and what ACIC argued before Judge Kenney was a little bit different from what Mr. Slago has argued today, and they may- I'd be shocked if arguments were to change what they were made in lower courts. But I think, Judge Drexler, what was argued below by ACIC is that, quite simply, this agreement only applied to the Florida litigation because that's all that was listed, and they ignored the fact that, for example, this recital says, and all other matters between the parties relating to or arising out of the project. If this agreement only applied to the Florida litigation, what is listed specifically, as Your Honor indicated, then, and all other matters between the parties relating to or arising out of the project, has no meaning. In addition- This sentence, when your worthy counsel opponent was put to the task by the Chief Judge to put it in one sentence, I think he went on a little further than one sentence. But let me proffer one format. If this was his response in one sentence, that is, if we don't prevail here, it will work in injustice. What about this? What's your response to that? I think that is incorrect, Judge Gregory, for a number of reasons. Carolina Realty and Development very strenuously disputed the general contractor debt corporation's right to recover any of the performance bonds, any of the payment bonds. Absolutely. That's why you objected to paying anything or settling it. Yes, sir. For example, on page 95, I think it's included in one of my memos, in the joint appendix, there are cited a half dozen or so points that were made that Carolina Realty and Development was owed $1.5 million for the subcontract work that was done. But I'm going to give you all of that. But if you didn't prevail here today, you would still have those defenses, wouldn't you? I'm not sure, Your Honor. That would be in dispute. We would have settled. But instead, what happens is if, in fact, you were wrong, then here the appellants have paid something that they should have been indemnified. And you get to get a free ride because of this language. You say it's broad, but I can't imagine an insurance company wanting to release the case. And I guess, Judge Gregory, I would say to the extent that that is correct in this case, and again, I wouldn't want to concede that based on those facts that I've outlined, but to the extent that is correct, I would submit to the court that that's no more different than any number of settlements where a party has higher remorse and comes in after the fact. And I know all of you have seen it in your practice and on the bench and says, you know what? In hindsight, I should have done this different. This is not a good settlement. This is not the best deal based on any number of circumstances. And I think what courts uniformly do in applying the appropriate contract principles are to look at the unambiguous four corners of it without getting down that slippery slope to say subjectively that may not have been the best deal. But this is different, though. This is not biased remorse. They're not saying, oops, I paid too much. I really wish I hadn't settled this case. No, they're saying the amount is fine and the settling is fine, but there was never any intent to release you in the litigation that was freestanding on the condemnation. And what I want to submit, Judge Gregory, is that again, you have to apply the contract principles that says you gather those facts and garner those facts and marshal those at the court from the unambiguous four corners of the agreement. And keep in mind too, Judge Gregory, this is a sophisticated insurance company in the business of dealing with these claims and these matters. This was an attorney who signed on behalf of ACIC the final provision, indeed, of the settlement agreement says the individual signing below state that they have read this settlement agreement, which I believe, again, as our and it's clear. So you had an attorney for a sophisticated company that read and signed that agreement. It should be charged with that. And your honor, again, don't think you can go to that second portion, which is, well, you know what, subjectively, that's not what we meant at this stage of the game. If I can make one other point on that extrinsic evidence, if you will, or the subject of intent, we also don't believe, Judge Drexler, that that issue was argued below or preserved. Which one is that? In essence, the second affidavit of Mr. Lannan, the AIC representative, where there is supposed evidence of the subject of intent, that that's not what I meant to sign on that agreement is releasing all of these claims. I don't believe that point was argued below on behalf of ACIC. And specifically, the transcript is in the record of the hearing before Judge Kane, I think, commencing at Joint Appendix 178. Let me just point out a few things. Judge Kane's opinion notes in footnote seven of his decision that no specifically appellate's counsel below stated there is no ambiguity. We do think that you only look at the four corners of the agreement. In other words, you don't go beyond that to examine any extrinsic evidence. I specifically argued that point below that in response to the affidavits or deposition transcripts or any supposed extrinsic evidence, indirect response to the motion to enforce settlement agreement. There was no response to that at the hearing below, and there was no response to that to the filing in opposition. Now, what ACIC says is that Mr. Lannan's, what we call the second deposition, was a part of ACIC's motion for disaffirmative motion for some reason. But it was not incorporated into this argument, and specifically, if you go and look at the transcript, I said there has been no tendering of any extrinsic evidence, and Ms. Kniffen, who's Mr. Slagle's partner who handled this matter below, never submitted that to Judge Kane. So, we would submit that the issue of any subjective extrinsic evidence was indeed not preserved. Let me ask you the same question I asked Mr. Slagle, which is, what do you regard as your single best, your best argument, your best reason why you should prevail? I'm going to try to limit you to one. Just have a short and a nutshell. And Judge, I think I can do that, and that is the unambiguous language of the settlement agreement and applying very elementary contract principles. And if I had to add one subpart, it is particularly the fact there is a carve-out provision showing that that was done, and when there's not a carve-out provision here, then it shows that it's broader than the Florida litigation. If there are no more questions, Your Honors, that's all I have. Okay, thank you. Thank you very much. Mr. Slagle, you have some time remaining. Thank you, Your Honor. I have a few points, but I think since there's been a focus on the notion that there was a carve-out provision, let's look closely at that. And let me add that when I was in elementary school, we used to graph sentences. You have subordinate clauses and whatnot, and if you do that, paragraph 4, you end up with something like this. It's a mess. I admit it's a mess. But the operative language, the breadth of the language that has to be relied upon by the athletes is the language I mentioned before, which is relating all matters between the parties relating to the project, project being a defined term. So why does there have to be a carve-out? Let's look at the carve-out, which is the last sentence of paragraph 4. The settlement agreement does not release Carolina or its insurers other than ACIC regarding any insurance coverage or claims for indemnity relating to, again, there's that relating to language. And if you search the document, you will find other places where relating to, arising out of, or relating to or arising out of are used interchangeably. It doesn't have a whole lot of significance. Relating to any personal injuries or property damage caused. So what they have carved out is potential insurance coverage for personal injuries or property damage. Personal injuries, but what personal injuries or property damage? That has to be personal injuries or property damage caused relating to the project, a defined term. And as we mentioned before, in the recitals, the project as a defined term is defined by reference to Carolina's work. And in that, when you look at that sequence, it makes perfect sense to have that specific, and when we talk about carve-outs, that's the only one. There's not a host of carve-outs in the settlement agreement that the indemnity agreement should have been thrown into. That specific one, and it has to do with property damage or personal injury claims, and those could only be in relation to Carolina's work, Carolina's actual work on the project, which is consistent with the notion that the breadth of the language in paragraph four is tied to the defined terms in the recitals when you look at the four corners of the agreement. The entire agreement draws a picture that establishes, and there's also been some discussion about the state of the record with regard to supplemental affidavit, which did not just accidentally fall into the record, by the way. It's addressed in the briefing in the court below of Frank Lanik, the officer from American Contractors, to the effect that American Contractors never intended to release the indemnitories from the indemnity agreement, which, as Judge Gregory pointed out, is a fairly sensible assumption in any of it. But even without that affidavit, the court below disregarded the cardinal rule of construing a contract, which is to arrive at the actual intent. It is not to give effect to an artificial intent that does not serve the purpose of the contract reasonably expressed. And Judge Duncan has pointed out that there's a parole evidence rule that excludes that type of evidence, that I intended this, not that. But when we're saying look at the circumstances and what some courts call objective extrinsic circumstances under which the settlement agreement was executed, that means look at the fact that there was an indemnity suit pending. Look at the fact that this settlement was arrived at over the objections of Carolina Realty, which is one of the parties seeking to obtain a benefit from it, and consider the purpose of the settlement agreement in that context. Thank you. Okay, thank you. I'll ask the clerk to adjourn the court, then we'll come down and greet the counsel.
judges: William B. Traxler Jr., Roger L. Gregory, Allyson K. Duncan